1  MICHAEL W. VIVOLI (Bar No. 184366)
   JASON P. SACCUZZO (Bar No. 221837)
2  VIVOLI & ASSOCIATES
   2550 Fifth Avenue, Ninth Floor
3  San Diego, California 92103
   (619) 744-9992 (Tel)
4  (619) 744-9994 (Fax)

5  Attorneys for Plaintiff, SIGNAL ENGINEERING, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 SIGNAL ENGINEERING, INC., a California   )  Case No. 08 CV 2091 LAB BLM
   corporation;                             )
12                                          )  COMPLAINT FOR: (1) RESCISSION
                                            )  OF CONTRACT; AND (2)
13              Plaintiff,                   )  DECLARATORY RELIEF
                                            )
14      v.                                  )
                                            )  [DEMAND FOR JURY TRIAL]
15 TADIRAN SPECTRALINK Ltd., a wholly-      )
16 owned subsidiary of Elisra Group, a company )
   organized under the laws of Israel; and, DOES 1 )
17 to 25,                                   )
                                            )
18              Defendants.                  )
                                            )
19 _____ )

20      1.      This is an action for, in addition to rescission, a declaratory judgment pursuant to

21 28 U.S.C. § 2201 and 28 U.S.C. 2202, brought by Plaintiff SIGNAL ENGINEERING, INC.

22 ("SEI") against Defendant TADIRAN SPECTRALINK Ltd. ("Spectralink") for the purposes of

23 determining a question of actual controversy and the rights and obligations between the parties as

24 set forth below.

25                    **THE PARTIES AND JURISDICTION**

26      2.      Plaintiff SEI is a California corporation authorized to do business, and at all times

27 herein relevant has been doing business in the State of California, with its principal place of

28 business is located in San Diego, California.  Plaintiff is an engineering company that develops,

                                         1

FILED

2008 NOV 12  PM 4: 32

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1    among other things, transmitters and receivers for satellite aided search and rescue beacons. The

2    relevant transactions occurred within the County of San Diego, California.

3         3.    Defendant Spectralink is a wholly-owned subsidiary of Elisra Group, a company

4    organized under the laws of Israel, with its principal place of business is located in Holon, Israel.

5    Defendant is a producer of advanced wireless communications systems.

6         4.    Plaintiff is ignorant of the names and/or identities of the defendants sued herein as

7    DOES 1 through 25, but will seek leave of court to substitute their true identities when they

8    become known.  DOES 1 through 25 are believed to be natural persons and/or entities claiming

9    to hold some interest in the alleged contract at issue in this case and/or are believed to be jointly

10   responsible with Spectralink for the claims and obligations listed herein, and are individuals

11   and/or entities against whom SEI is entitled to assert the relief herein.

12        5.    This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332

13   because:

14        a.    There is a complete diversity of citizenship between SEI and Spectralink in this

15             action.

16        b.    The matter in controversy exceeds the sum of $75,000, exclusive of interest and

17             costs.

18        6.    This Court has personal jurisdiction over Spectralink because Spectralink has

19   done and continues to do business in the State of California, County of San Diego, and the

20   agreement at issue herein was negotiated, executed, and to be performed in San Diego.   In

21   addition, Spectralink has, in prior written contracts between Spectralink and SEI, consented to

22   venue in San Diego, and to the assertion of this Court's jurisdiction over Spectralink.  Therefore,

23   Spectralink has sufficient minimum contacts with California such that the exercise of jurisdiction

24   by this Court is permissible under traditional notions of fair play and substantial justice.

25        7.    The declaratory relief alternatively requested herein is necessary to clarify and

26   settle the legal relations between the parties, and to terminate and afford relief from the existing

27   uncertainty, insecurity and controversy giving rise to this proceeding.

28   / / / /

---

2

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

## FACTUAL BACKGROUND

8.     This action for rescission of contract and/or for declaratory relief arises as a result of a legal dispute between SEI and Spectralink relating to the alleged rights and obligations between the parties, including the enforceability and interpretation of a written "Memorandum of Agreement" for the proposed design, engineering and manufacture of personal locator beacons for the United States Air Force pursuant to a contract later awarded SEI by the USAF.  A true and accurate copy of the Memorandum of Agreement signed by SEI and Spectralink is attached hereto as Exhibit "1" and is incorporated herein by this reference as though fully set forth herein (hereinafter the "MOA").  The MOA followed a prior series of written contracts between the parties.

### A.     The Parties' Pre-Existing Relationship.

9.     Prior to 2006, SEI served as a subcontractor to Spectralink in connection with the provision of locator beacons to the United States Navy ("USN") under a direct contract between Spectralink and the USN.  In or about 2006, Spectralink approached SEI regarding a proposed venture to respond to a Request for Proposals ("RFP") issued by the United States Air Force ("USAF") to acquire advanced locator beacons for use in its manned aircraft ("the Product").  The Product represented a significantly upgraded version of the locator beacons previously supplied by the parties to the USN, and would require substantial engineering, research and development in order to develop and deliver the Product contemplated by the USAF's RFP.  At the time Spectralink approached SEI, SEI had already developed the key technology for search and rescue beacons in connection with a private commercial endeavor.  Ultimately, this technology was applied to the UASF beacon to give it a significant advantage over other military beacons on the market.  Spectralink approached SEI because it possessed the technical capabilities and had the past track record of performance needed to develop and manufacture the Product, and because the USAF's RFP required the participation of a "small business" as defined by the Small Business Administration ("SBA"), for which SEI was qualified.

10.     In response to Spectralink's invitation, SEI initially expressed it was not interested because of other lucrative opportunities then available to SEI.  However, in order to

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1   induce SEI into considering partnering with Spectralink, Spectralink offered to joint venture the
2   proposed project, and to share the profits thereof equally with SEI.  Even then, SEI explained it
3   was not interested in pursuing a relationship that contemplated a role similar to that which SEI
4   had played on the USN contract, and would only agree to partner with Spectralink if SEI would
5   serve as the prime contractor on the project.  Thereafter the parties executed certain written
6   agreements and jointly submitted a version of the beacon to the USAF.

7        **B.     The USAF's RFP and the MOA.**

8        11.    In early 2008, Spectralink and SEI received an RFP from the USAF for
9   production of the locator beacon developed in their prior contract, which contemplated both a
10  "first article" testing article and a second article consisting of several high volume production
11  options available to be exercised by the USAF.  Spectralink pursued the option of responding to
12  the RFP as a prime contractor.  SEI, initially expecting to pursue the contract alone, proceeded to
13  establish a relationship and request quotes from a circuit card contract manufacturer in order to
14  bid the project itself.  However, after reviewing the RFP, Spectralink concluded that teaming
15  with SEI would provide a greater likelihood of receiving a production contract with the USAF.
16  Accordingly, and in exchange for Spectralink's oral promises regarding the material terms of the
17  parties' relationship, SEI agreed to serve as the prime contractor on a joint submission to the
18  USAF in response to the RFP and to share the costing information received from its contract
19  manufacturer to the proposal effort.  Spectralink offered to draft a written agreement between the
20  parties intended to memorialize the terms and conditions of their relationship while under
21  contract with the USAF to produce both the first article and production series of the beacon.  The
22  written agreement between the parties was to be provided in short order since the parties had
23  previously entered into a contract concerning an earlier version of the project.

24       12.    Ultimately, Spectralink withheld delivery of the proposed written MOA until the
25  parties were actively involved in responding to the RFP, and SEI's attention was entirely focused
26  on the highly technical aspects of that submission.  Indeed, SEI did not receive the proposed
27  MOA until just days before the required submission deadline and was thus unable to have the
28  MOA reviewed by its counsel before its execution.  Moreover, SEI's principals were, at the time,

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1  wholly consumed with DVT testing and re-writing highly technical provisions of the parties'

2  joint submission to the USAF, such that they were unable to meaningfully review the proposed

3  MOA.

4      13.    The MOA reflects the parties' prior oral agreement that, among other things,

5  Spectralink and SEI would share equally in the profits derived from the contract ultimately

6  awarded to SEI by the USAF.  To that end, Article 3 of the MOA provides as follows:

7
8  > Subject to the requirements and conditions of the Program and Future
> Projects, the Parties will do their best in order to secure that the profits from
> the Program and/or any Future Projects will be distributed equally between
9  > the Parties.

10      14.    The MOA also reflects the prior oral agreement of the Parties, at Article 1.1, that

11  at least fifty-one percent (51%) of the Labor Program cost (i.e., the labor workload and resulting

12  revenues therefrom) would be placed with SEI.  This provision was included as a reflection of

13  the Parties' recognition that SEI, rather than Spectralink, would be the party most involved in the

14  technical aspects of developing the Product and would be devoting the majority of the labor

15  contemplated by the Parties' contract with the USAF.  In addition to Article 1.1, the MOA

16  contains a "forseen" allocation of work, attached to the MOA as Annex A.  Annex provides as

17  follows:

18  > The work share forseen [sic.] for the program is as follows:

19  > 1.  [SEI] will act as prime achieving its labor through managing the program,
20  >     engineering support, final assembly and testing.   [SEI] will subcontract
>     [Spectralink].
21  > 2.  Spectralink will be subcontractor providing the electronic cards production
22  >     management and delivery of the cards to [SEI] and manufacturing the Remote
>     activation cable, two trailing antennas and some of the training facilities (such as
23  >     but not limited to DVD and documents).

24      15.    Despite the language of Paragraph 2 to Annex A (which Spectralink drafted),

25  Spectralink's involvement in procuring the electronic cards contemplated by the MOA was, in

26  reality, limited to placing an order for these components from SEI's subcontractor.  Likewise, the

27  acquisition of the remote activation cable and the two trailing antennas involved no more than

28  placing purchase orders for those components of the Product, although Spectralink was to

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1 │ provide quality control assurance to ensure that the components met the specifications provided

2 │ to those subcontractors.  By contrast, SEI was to provide all of the labor-intensive engineering

3 │ support and coordination effort required to develop and manufacture the Product.

4 │         16.     At or about the same time the MOA was presented to SEI, Spectralink was

5 │ involved in developing the price components of the parties' mutual submission to the USAF,

6 │ including the proposed cost of the Product.  Notably, as reflected in Article 1.2 of the MOA,

7 │ Spectralink refused to provide any of its cost information to SEI until after SEI executed the

8 │ MOA, which Spectralink intentionally delivered to SEI late in the game, and at a time when it

9 │ knew SEI would be actively involved in drafting the highly technical response to the USAF's

10 │ RFP, and thus unable to meaningfully review the MOA, as explained above.  Unbeknownst to

11 │ SEI at the time, Spectralink was developing the bid price without accounting for all costs and

12 │ elements thereof within the scope of work, and was seriously under-bidding various components

13 │ of the work and the cost of certain key materials.  Moreover, and contrary to the express

14 │ provisions of the MOA, Spectralink failed and refused to enter into a subcontract as

15 │ contemplated by the MOA following a contract award to SEI by from the USAF.

16 │         **C.     SEI's Performance and Spectralink's Non-Performance.**

17 │         17.     After executing the MOA, and prior to a contract award from the USAF to

18 │ develop and supply the Product in two articles, SEI began acquiring the components required to

19 │ produce the Product, and commenced the engineering efforts required to further develop the

20 │ Product.   In addition, SEI requested Spectralink promptly acquire and provide to SEI the

21 │ components Spectralink agreed to provide for use in developing and manufacturing the Product.

22 │ Ultimately, and because the Parties had not yet obtained a signed and State Department-approved

23 │ Technical Assistance Agreement ("TAA"), Spectralink was unable to acquire the needed cards

24 │ and SEI acquired the electronic cards that were to have been procured by Spectralink.

25 │         18.     In response to SEI's numerous requests Spectralink provide the remote activation

26 │ cable and trailing antennas contemplated by the MOA for use in the first article models,

27 │ Spectralink failed to deliver the needed components, and failed – and continues to fail– to both

28 │ deliver those components and to perform the requisite quality control services required of it.  As

1    a result, SEI has devoted substantial expense and engineering time, including the purchase of all

2    connectors used in the manufacture of the activation cable, in an effort to expedite the process in

3    light of Spectralink's non-performance.

4         19.    The USAF later exercised its first option for more than 2,000 production models

5    of the Product, to be developed simultaneously with the first article models.  Accordingly SEI

6    requested Spectralink immediately provide the activation cable and trailing antennas for <u>both</u> the

7    first article models and the production models.  Spectralink has failed to deliver complete

8    quantities of the components for the first article of production models.  And, with regard to the

9    production models, Spectralink declined to place the needed purchase orders with its

10   subcontractor until SEI first agreed to execute a purchase order in favor of Spectralink, and to

11   pay to Spectralink a substantially inflated price for the components that vastly exceeds the true

12   cost of the components.

13        20.    Upon receiving the proposed purchase order requests from Spectralink, SEI

14   immediately recognized that the proposed cost of the equipment substantially exceeded what

15   should be the true cost of the equipment, as SEI is familiar with such costs within its industry

16   and had actual costing information on some components directly from the subcontractors.

17   Accordingly, SEI requested Spectralink provide the backup documentation concerning the cost

18   to Spectralink of the equipment, which Spectralink initially refused to provide to SEI.  However,

19   SEI ultimately obtained documentation of Spectralinks' actual cost to acquire the equipment,

20   which revealed that the purchase price being proposed by Spectralink substantially exceeded (in

21   some instances by a multiple of over two times) the actual cost to Spetralink of the components.

22        21.    SEI objected and still objects to paying the re-purchase price proposed by

23   Spectralink; a cost that promises to eliminate, in whole or in substantial part, any prospects of a

24   "profit" from the project between SEI and the USAF and, thus, any return to SEI out of the

25   project.  Instead, SEI demanded Spectralink provide the necessary equipment to SEI at the cost

26   thereof and has continued to demand delivery of the first article models of these components.

27   Spectralink continues to defend its claimed right to effectively surcharge the cost of the

28   production components to SEI.  Accordingly, Spectralink has failed and refused to deliver the

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

components to SEI unless SEI first agrees to execute a purchase order to Spectralink for the inflated prices proposed by Spectralink. Notably, Spectralink has defended its claimed "right" to surcharge the equipment on the sole basis that Spectralink "needs to show" a large amount of up-front revenue to its parent company, Elisra. Spectralink has provided no other indicated basis for its claimed right to surcharge its partner in order to effectively front-load its profits, while virtually assuring the project will represent a loss to SEI.

22.     Spectralink's proposed manner of inflating the cost to SEI of the components Spectralink agreed to deliver for the benefit of the parties' partnership would, in fact, require SEI to develop and manufacture the Product at a sizeable loss to SEI, while providing Spectralink with a handsome up-front profit from the program. Spectralink's conduct would thus completely undermine SEI's rights under both its contract with the USAF and, to the extent it is deemed enforceable, the MOA. Nonetheless, Spectralink has refused to provide the production equipment absent a signed purchase order from SEI incorporating Spectralink's improperly front-loaded profit, and has also failed – and continues to fail – to complete the delivery of the components needed to deliver the first article models of the Product. As a result of Spectralink's conduct, SEI is unable to complete development of the Product, which has placed SEI's contract with the USAF – as well as SEI's reputation as a cutting edge developer and manufacturer of wireless communication devices – in dire jeopardy.

23.     Spectralink's conduct is particularly egregious because, following the parties signatures on the MOA and the parties' joint submission of the response to the USAF's RFP, SEI discovered that Spectralink had badly under-bid the project by failing to include or account for all costs involved in building the Product, and by deliberately under-bidding components SEI or others were to supply. In particular, Spectralink represented to SEI that a proposed supplier of the housing case for the Product had agreed to a unit price for each housing when, in fact, that supplier had not agreed to a price. Moreover, the proposed price utilized by Spectralink in its budgeting assumptions was substantially and knowingly under-bid, creating yet additional losses built into the Product program for SEI, since Spectralink knew it would fall to SEI to design and obtain the needed replacement component.

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

### D.   The Parties' Respective Contentions.

24.     SEI contends the MOA is not enforceable because of, *inter alia*: (1) the circumstances surrounding and manner in which it was provided to SEI; (2) the false representations made to SEI to induce its signature on the MOA; (3) the adhesive nature of its proposed terms; (4) the failure of the parties to achieve a meeting of minds; and, (5) the lack of consideration sufficient to create a binding contract.  SEI is informed Spectralink disputes these contentions and contends the MOA is a valid, binding contract.  In addition, SEI contends that, to the extent the MOA is determined to be a binding, enforceable agreement (which SEI disputes), Spectralink is obligated under the terms of the MOA to deliver the equipment contemplated within the MOA for the actual cost to Spectralink of the equipment, and without any surcharge included by Spectralink.  SEI is informed and believes and based thereon alleges that Spectralink disputes this contention, and contends Spectralink is entitled to include an up-front surcharge within the price of the equipment delivered to SEI, despite the effect that surcharge will have on eroding and/or eliminating any potential for profit.  By its conduct, Spectralink has effectively held the entire contract hostage until it receives a front-loaded price for equipment it is legally obligated to deliver for its true cost to Spectralink, causing damage to SEI, and precluding SEI from performing its contract with the USAF.

25.     In addition to the foregoing, the parties also dispute the allocation of work-share contemplated between the parties, including but not limited to the MOA's proposed estimate of the allocated work-share.  Specifically, SEI understands that Spectralink contends it is entitled to exercise control over the acquisition of (and sale to SEI of) the electronic cards described in Annex A to the MOA, despite the fact Spectralink was unable – because of the absence of a TAA – to secure and deliver that equipment to SEI, which task SEI self-performed, and can continue to perform much more efficiently for the mutual benefit of the parties' agreement to equally share all profits from the project.  SEI further understands that Spectralink contends that Spectralink is entitled to control acquisition of the activation cable and trailing antennas; yet Spectralink has failed and refused to deliver these components as set forth above, effectively relinquishing (to the extent Spectralink ever had it in the first place) any right to control these

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1   items of work-share, even if the MOA is a valid contract (which SEI disputes), and even if the

2   MOA purports to allocate these items of work-share to Spectralink.

3        26.    SEI disputes Spectralink's foregoing contentions, and contends that *even if* the

4   MOA is determined to be a valid contract (which SEI disputes), SEI is entitled – by virtue of the

5   express terms of the MOA itself and its subsequent discovery of facts that occurred after

6   execution of the MOA, and also by virtue of the facts SEI has discovered concerning

7   Spectralink's conduct in under-bidding various costs associated with producing the unit (while

8   improperly surcharging, for its own financial benefit) – to solely perform and control these

9   elements of the work.

10        27.    In addition to the foregoing, and despite the fact that Article 1.4 of the MOA

11   expressly contemplates that the parties will "promptly enter into a subcontract agreement with

12   respect to Spectralink's Scope of Work based upon the terms and conditions of this MOA, the

13   Proposal and any alterations and amendments thereto as may be agreed between the Parties,"

14   Spectralink has failed and refuses to enter into such a subcontract, creating additional uncertainty

15   between the parties with respect to their respective rights and obligations.  The past conduct of

16   the parties was that a formal subcontract agreement would be negotiated and executed, but

17   Spectralink refuses to negotiate and execute a mutually acceptable subcontract agreement; likely

18   because of its recognition the purported MOA is inconsistent with the parties' true agreements.

19        28.    By virtue of the foregoing, an actual controversy now exists between the parties

20   with regard to the following non-exhaustive list of specific controversies:

21       a.    Whether the MOA constitutes a valid, binding contract;

22       b.    Whether SEI is obligated to comply with some or any of the proposed terms of

23       the MOA;

24       c.    Whether Spectralink is entitled, under the MOA (and assuming it is a valid and

25       binding contract), to include a surcharge over and above the actual cost of the

26       production equipment to be furnished by Spectralink to SEI;

27       d.    Whether, assuming the MOA is valid and enforceable, and assuming further that

28       Spectralink is entitled under the MOA to include a surcharge for the production

10

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

components it is required by the MOA to deliver to Spectralink (an entitlement which SEI disputes), SEI may nonetheless reduce and/or eliminate the surcharge to account for Spectralink's errors and/or omissions in bidding the price of the Product and in withholding its performance under the MOA; and,

e.      Whether, assuming the MOA is a binding contract, Spectralink is entitled to exert control over the acquisition of the electronic cards needed to produce the Product, or whether SEI is entitled to assume this aspect of work-share given the facts set forth above.

29.     Although Articles 7.1 and 7.2 of the MOA purport to, respectively, select the law of the State of New York as the law governing the MOA, and provide for dispute resolution before the International Chamber of Commerce, SEI contends these provisions are (and indeed, for the reasons stated herein, the entire MOA is) legally unenforceable.  First, the State of New York has no interest, and never had any interest in the subject matter of the MOA or any of the transactions contemplated therein and there was no reasonable basis for selecting the laws of New York to govern the MOA.  And, with regard to the proposed alternative dispute provisions of Articles 7.2, said provisions do not contemplate a binding election to arbitrate the parties' disputes or otherwise waive SEI's rights to a trial or other relief by Court or jury and are also unenforceable by virtue of the principles of adhesion and unconscionability.  Moreover, the parties' prior binding contracts appropriately specified California as the applicable law, and provided that any disputes initiated by SEI would be venued in San Diego, California.  Thus, the parties' true agreement contemplated California as governing law, and San Diego as the proper venue for the disputes described herein.

30.     In addition to the foregoing specific controversies between the parties, there exist other actual controversies between the parties, judicial resolution of which is necessary to clarify and settle the legal relations between the parties, and to terminate and afford relief from the existing uncertainty, insecurity and controversy giving rise to this proceeding.

31.     In addition to the above-requested declaratory relief, SEI is informed and believes that injunctive relief may prove necessary to allow SEI to continue to complete performance of

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1  its contract with the USAF, free from Spectralink's breach of the parties' true agreement and the

2  purported terms of the MOA, and free of Spectralink's efforts to frustrate SEI's performance of

3  its underlying contract with the USAF. Accordingly, SEI seeks, in addition to the declaratory

4  relief set forth above, prohibitory and injunctive relief from this Court to the extent necessary to

5  allow SEI to perform its contract with the USAF.

6  **FIRST CAUSE OF ACTION**

7  **For Rescission of Contract**

8  **(By SEI Against Spectralink and DOES 1-25)**

9      32.    SEI incorporates by reference the allegations of Paragraphs 1 through 31 above,

10  as though fully set forth herein.

11     33.    As set forth above, Spectralink intentionally withheld delivery of the MOA to SEI

12  until a time when Spectralink knew SEI would be unable to meaningfully review it, and

13  Spectralink also withheld material facts from SEI and/or affirmatively misrepresented facts to

14  SEI in order to secure SEI's pressured execution of the MOA, without input from legal counsel,

15  and before SEI could meaningfully review the MOA and understand its contents. Moreover,

16  Spectralink refused to provide needed information to SEI until SEI first signed the MOA, which

17  was presented under improper circumstances, as detailed above. And, at the time Spectralink

18  delivered the MOA to SEI under the circumstanced detailed above, the parties were already

19  engaged in a relationship of trust and confidence, which obligated Spectralink to be forthright

20  and to act with the utmost good faith towards SEI in all dealings between the parties concerning

21  the subject matter of the MOA (duties Spectralink breached).

22     34.    The MOA, as drafted, lacks consideration to SEI, is adhesive and is unenforceable

23  as drafted. Moreover, Spectralink obtained SEI's signature on the MOA by withholding material

24  facts it owed SEI a duty to disclose and/or by misrepresenting facts in order to induce SEI's

25  signature on the MOA at a time when Spectralink knew SEI was unable to meaningfully review

26  and understand the MOA. In addition, and by virtue of Spectralink's conduct, as described in

27  detail above, there was no meeting of the minds sufficient to create a binding contract along the

28  lines set forth in the MOA. Accordingly, and by virtue of all of the foregoing, and for other

1  reasons that are subject to proof at the time of trial, the MOA is legally invalid and
2  unenforceable, and should be adjudged as such by order of this Court.

3       35.    The MOA is invalid and unenforceable for additional reasons not specified herein,
4  which are subject to proof at the time of trial, and which will require discovery from Spectralink
5  to fully determine all of the grounds upon which SEI is entitled to rescind and/or invalidate the
6  MOA by order of this Court.

7       36.    For the foregoing reasons, SEI seeks an order from this Court rescinding and/or
8  voiding the MOA in its entirety, and restoring to SEI all consideration rendered by it to
9  Spectralink thereunder.  SEI has not received any consideration from Spectralink which should
10  or must be returned to Spectralink.

11  **SECOND CAUSE OF ACTION**
12  **For Declaratory Relief**
13  **(By SEI Against Spectralink and DOES 1-25)**

14       37.    SEI incorporates by reference the allegations of Paragraphs 1 through 36, as
15  though fully set forth herein.  This cause of action is, in part, alternatively alleged, as rescission
16  of the MOA could negate some of the controversies listed herein, though the parties could still
17  require need of a judicial declaration of their respective rights and obligations.

18       38.    As set forth above, an actual controversy exists by and between the parties.  SEI
19  contends the MOA is not enforceable because of, *inter alia*: (1) the circumstances surrounding
20  and manner in which it was provided to SEI; (2) the false representations made to SEI to induce
21  its signature on the MOA; (3) the adhesive nature of its proposed terms; (4) the failure of the
22  parties to achieve a meeting of minds; and, (5) the lack of consideration sufficient to constitute a
23  binding contract.  SEI is informed Spectralink disputes these contentions and contends the MOA
24  is a valid, binding contract.  In addition, SEI contends that, to the extent the MOA is determined
25  to be a binding, enforceable agreement (which SEI disputes), Spectralink is obligated under the
26  terms of the MOA to deliver the equipment contemplated within the MOA for the actual cost to
27  Spectralink of the equipment, and without any surcharge included by Spectralink.  SEI is
28  informed and believes and based thereon alleges that Spectralink disputes this contention, and

13

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1 | contends Spectralink is entitled to include an up-front surcharge within the price of the
2 | equipment delivered to SEI, despite the effect that surcharge will have on eroding and/or
3 | eliminating any potential for profit.  By its conduct, Spectralink has effectively held the entire
4 | contract hostage until it receives a front-loaded price for equipment it is legally obligated to
5 | deliver for its true cost to Spectralink, causing damage to SEI, and precluding SEI from
6 | performing its contract with the USAF.

7 |      39.    In addition to the foregoing, and even assuming the MOA is enforceable, the
8 | parties also dispute the allocation of work-share contemplated between the parties, including but
9 | not limited to the MOA's proposed estimate of the allocated work-share.  Specifically, SEI
10 | understands that Spectralink contends it is entitled to exercise control over the acquisition of (and
11 | sale to SEI of) the electronic cards described in Annex A to the MOA, despite the fact
12 | Spectralink was unable – because of the absence of a TAA – to secure and deliver that
13 | equipment to SEI, which task SEI self-performed, and can continues to perform much more
14 | efficiently for the mutual benefit of the parties' agreement to equally share all profits from the
15 | project.  SEI further understands that Spectralink contends that Spectralink is entitled to control
16 | acquisition of the activation cable and trailing antennas; yet Spectralink has failed and refused to
17 | deliver these components as set forth above, effectively relinquishing any right to control these
18 | items of work-share even if the MOA is a valid contract, and even if the MOA allocates these
19 | items of work-share to Spectralink.

20 |      40.    SEI disputes Spectralink's foregoing contentions, and contends that *even if* the
21 | MOA is determined to be a valid contract (which SEI disputes), SEI is entitled – by virtue of the
22 | express terms of the MOA itself and its subsequent discovery of facts that occurred after
23 | execution of the MOA, and also by virtue of the facts SEI has discovered concerning
24 | Spectralink's conduct in under-bidding various costs associated with producing the unit (while
25 | improperly surcharging, for its own financial benefit) – to solely perform and control these
26 | elements of the work.

27 |      41.    By virtue of the foregoing, an actual controversy now exists between the parties
28 | with regard to the above-listed non-exclusive list of controversies.  In addition to these foregoing

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1  specific controversies between the parties, there exist other actual controversies between the

2  parties, judicial resolution of which is necessary to clarify and settle the legal relations between

3  the parties, and to terminate and afford relief from the existing uncertainty, insecurity and

4  controversy giving rise to this proceeding.

## PRAYER

6  WHEREFORE, Plaintiff prays that:

7  (1)   This Court issue an order declaring the MOA invalid and/or unenforceable and

8     rescinding same and restoring the parties to their prior positions;

9  (2)   This Court render a declaratory judgment declaring the rights and obligations of

10     the parties as set forth above;

11  (3)   Plaintiff recover its costs of suit;

12  (4)   For such other and further relief as the Court shall deem just and appropriate.

13  Dated: November 12, 2008          VIVOLI & ASSOCIATES

16     By:_____

17     MICHAEL W. VIVOLI
     JASON P. SACCUZZO
     Attorney for Plaintiff
18     SIGNAL ENGINEERING, INC.

15

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

# Attached Exhibit to Complaint

**Exhibit "1":**          **Memorandum of Agreement ("MOA")      Pages 1-7**

Exhibit "1"

COMMERCIAL SENSITIVE

# Memorandum of Agreement

This **Memorandum of Agreement** ("*MOA*") is entered into as of the 29TH day of March, 2008 ("*Effective Date*"), by and between Tadiran Spectralink Ltd., a company organized and existing under the laws of Israel, with its registered office and principal place of business located at Holon, Israel ("*Spectralink*"), and Signal Engineering Inc., a company organized under the laws of the State of California, U.S.A, with its registered office and principal place of business located at 6370 Lusk Blvd., Suite F206, San Diego, California 92121, USA ("*Signal*"). Spectralink and Signal may be referred to herein individually as a "*Party*" or collectively as the "*Parties*."

WHEREAS,   the US AIR FORCE (the "*Customer*") issued solicitation No. FA8902-08-R-1002 ("*RFP*"), for acquisition of Personal Locator Beacons ("*Product*" and "*Program*" respectively); and

WHEREAS,   Signal has extensive experience in the design, engineering and integration of equipment and systems similar to that required in the Program; and

WHEREAS,   Spectralink has extensive experience in the design, manufacture, integration of equipment and systems and logistics support similar to that required in the Program; and

WHEREAS,   Signal declares that it is defined as a small business under US regulations and is registered with the SBA; and

WHEREAS,   the Parties whish to establish exclusive working relationship with respect to the Program and to other future programs and/or customers (the "*Future Projects*").

NOW, THEREFORE, in consideration of the premises and mutual covenants and understandings hereinafter set forth, the Parties agree and undertake as follows;

1.   <u>Proposal for the Program</u>

    1.1   The Parties agree to pursue the Program on an exclusive and cooperative basis with Signal as the prime contractor and Spectralink as the subcontractor for the scope of work as set forth in the Annex A hereto. It is agreed that at least 51% (fifty one percent) of the Labor Program cost will be placed with Signal.

    1.2   Promptly following the signature of this MOA, Spectralink shall submit its price and technical proposals to Signal. Further the Parties will work together to prepare acceptable and competitive proposal (the technical part will be discussed subject to all necessary approvals according to relevant export laws and regulations) for submission to the Customer in response to the RFP (the "*Proposal*"). The Proposal shall be mutually agreed upon by the Parties prior to its submission and Spectralink shall participate in the preparation, presentation and negotiation of the Proposal and any subsequent prime contract.   Any changes affecting Spectralink's Scope of Work or other Spectralink's' obligations shall require the prior approval of Spectralink.

COMMERCIAL SENSITIVE

1.3    Spectralink shall be entitled to participate in meetings, briefings and negotiations that Signal will have with the Customer regarding the Program, and all communications that Signal will have with the Customer shall be coordinated with Spectralink.

1.4    In the event that Signal is successful in being awarded the prime contract for the Program, the Parties will promptly enter into a subcontract agreement with respect to Spectralink' Scope of Work based upon the terms and conditions of this MOA, the Proposal and any alterations and amendments thereto as may be agreed between the Parties (the "*Subcontract*"). Any change or modification requested by the Customer or initiated by one of the Parties in the Subcontract specifications or scope of work will be discussed in order to reach a mutual agreement on all financial, technical and operational aspects of such change or modification.

2.    Future Projects

2.1    Signal and Spectralink agree to pursue Future Projects on an exclusive and cooperative basis. Designation of prime and sub contractors shall be as follow:

2.1.1    Future Projects for customers outside USA – Spectralink shall be the prime contractor;

2.1.2    Future Projects for the US Armed Forces and/or US Government – Designation of prime contractor and subcontractor shall be mutually agreed based on the terms of each project no later then 60 days prior to the submittal of the Parties' proposal to such project;

2.1.3    The Parties scope of work in Future Projects shall be mutually agreed based on the terms of each program and on the preliminary distribution of work, detailed in Annex B hereto.

2.1.4    Signal shall be the prime contractor in all projects for civil markets.

2.2    In order to manage their joint activities in Future Projects, including, among other, the coordination of marketing activities, the submitting of proposals to the customers and management of the parties activities under this MOA, the parties shall establish a joint steering committee. The steering committee shall meet on regular basis and all decisions shall be made unanimously.

3.    Profits Distribution

Subject to the requirements and conditions of the Program and Future Projects, the Parties will do their best in order to secure that the profits from the Program and/or any Future Projects will be distributed equally between the Parties.

COMMERCIAL SENSITIVE

4. **Intellectual Property Rights**

   4.1    Each party shall retain its Intellectual Property currently owned or licensed by it (the "Background IP") or obtained by it in the conduct of its responsibilities under this MOA or any resulting contract (the "Foreground IP"), provided, however, that any Intellectual Property jointly developed under this MOA or any resulting contract (the "Joint IP") and the Product shall be jointly-owned by both Parties, without restrictions.

   4.2    Each Party shall grant the other Party a non-terminable, world wide, royalty free license to use any Background IP and Foreground IP of the granting party necessary for the execution of the Program or any Future Projects.

5. **Termination**

   This MOA is effective from the Effective Date will be terminated except for the clauses regarding proprietary information and intellectual property rights which shall survive such termination, without liability of either of the Parties hereto, except as otherwise expressly provided herein, upon the occurrence of any the following:

   5.1    Mutual written agreement between the Parties;

   5.2    Three (3) years from the Effective Date.

6. **Independent Contractors**

   This MOA does not constitute a partnership or any other form of business association not specifically mentioned herein and the relationship between the parties is that of independent contractors.

7. **Governing Law and Dispute Resolution**

   7.1    This MOA is governed in all respects by the laws of New York.

   7.2    All disputes arising in connection with this MOA, which cannot be settled amicably within 30 days after written notification given by initiating Party to the other Party, the Parties shall within 10 days enter into a mediation process in New York, New York, USA for up to 30 days according to the procedures of the International Chamber of Commerce (ICC). If after the mediation period the matter is still in dispute and the Parties have not agreed to extend the mediation process, the Parties agree to participate in an arbitration procedure in New York, New York, USA which will start upon one Party's request to the ICC to enter into an arbitration process with an arbitrator, according to ICC procedures.

   7.3    In case that a TAA between Signal and Spectralink will not be approved prior to award or /and upon activation of CLIN 0001 (including 0001AA and 0001AB), Signal will provide this task in which Spectralink part will be only providing the Cable and antennas and not to the work share described under Annex A.

   7.4    Once the TAA is approved in each of the program phases the parties will revert to the work share described in Annex A.

COMMERCIAL SENSITIVE

7.5    In case that a TAA between Signal and Spectralink will not be approved in the life cycle of the program, Spectralink work share will be limited to provide Antennas and Remote activation Cable and Royalties from the URTXX price in scope of paragraph 3 above that will result in equal profit.

8.    Miscellaneous

8.1    Each Party acknowledges and undertakes that it has a duty of utmost good faith to the other in the performance of this MOA.

8.2    No release shall be made by either Party to the news media or the general public relating to this MOA and/or the subject matter thereof without prior written approval of the other Party, which approval shall not be unreasonably withheld. The Parties further agree that news releases made by either of them shall recognize the participation and contributions of the other Party.

8.3    Should the Parties activities under this MOA be subject to the export laws, regulations, licenses and approval required, of the Government of Israel or of the US Government, Spectralink shall be responsible to obtain such licenses and approvals from the Government of Israel, and Signal shall be responsible for obtaining such licenses and approvals from the US Government, on best efforts basis.

8.4    With the exception of a corporate reorganization and transfer to an affiliate, neither party shall assign or transfer any benefits under this MOA without the prior written approval of the other Party.

8.5    The Parties designate the following points of contact for coordination of issues related to this MOA:

Spectralink:    Zvi Krepel
                Tel: 972-3-5573108
                Fax: 972-3-5577579
                Email: Krepel@tadspec.com

Signal:         John N. Thompson
                Tel: 858-552-8131
                Fax: 858-552-1429
                Email: jthompson@sigeng.com

8.6    All notices between the Parties shall be addressed in English, in writing by mail or by facsimile or similar confirmed communications and shall be addressed to the points of contact list above.

8.7    This MOA constitutes the entire understanding of the parties hereto and supersedes all prior agreements or negotiations between the parties relating to the subject matter hereof. Any amendment of this MOA shall be made in writing and signed by the Parties.

-4-

**COMMERCIAL SENSITIVE**

IN WITNESS WHEREOF, the parties have caused this MOA to be duly executed as of the date last below written.

Tadiran Spectralink Ltd.
By:
    Name: Zvi Krepel
    Position: General Manager
Date: 30 - MARCH 2008

Signal Engineering Inc.
By:
    Name: John N. Thompson
    Position: President
Date: 29 MARCH 2008

-5-

COMMERCIAL SENSITIVE

## ANNEX A

### Scope of Work for the Program

The work share foreseen for the program is as follows:

1. Signal will act as prime achieving its labor through managing the program, engineering support, final assembly and testing. Signal will subcontract Tadiran Spectralink.

2. Spectralink will be subcontractor providing the electronic cards production management and delivery of the cards to Signal and manufacturing the Remote activation Cable, two trailing antennas and some of the training facilities (such as but not limited to DVD and documents).

N:\00_PROPOSALS\2008\AF_PLB Production\SEI-TS MOU\MOA Signal-Spectrlink (March 18 2008)REV 2.doc

Ex. 1, p. 6

COMMERCIAL SENSITIVE

## ANNEX B

**Preliminary Scope of Work for Future Projects**

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SIGNAL ENGINEERING, INC.

**DEFENDANTS**
TADIRAN SPECTRALINK Ltd.

FILED

(b) County of Residence of First Listed Plaintiff   San Diego, California
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Holon, Israel
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

2008 NOV 12 PM 4: 31

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)
Michael W. Vivoli, Esq., Vivoli & Associates, 2550 5th Ave., 9th Floor, San Diego, CA 92103; Tel: (619) 744-9992

Attorneys (If Known)

'08 CV 2091 LAB BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2201 & 28 U.S.C. § 2202, Court has subject matter jurisdiction under 28 U.S.C. § 1332
Brief description of cause:
Declaratory Relief, Rescission of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
11/12/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 157000   AMOUNT $350   APPLYING IFP   JUDGE   MAG. JUDGE

AC  11/12/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**#  157000      —  TC**

**November  12,  2008
16:30:54**

**Civ  Fil  Non-Pris**
USAO #.: 08-2091
Judge..: LARRY A BURNS
Amount.:                        $350.00 CK
Check#.: 229694

**Total—>   $350.00**

FROM: SIGNAL VS TADIRAN